## MANGAN v PENNSYLVANIA RD CO

Ohio Appeals, 2nd Dist, Greene Co

No 433.    Decided Jan 4, 1938

Miller & Finney, Xenia, for plaintiff-appellee.

Matthews & Matthews, Dayton, for defendant-appellant.

## OPINION

By BARNES, PJ.

The above entitled cause is now being determined on error proceedings by virtue of defendant's appeal on question of law from the final judgment of the Municipal Court of the city of Xenia, Greene County, Ohio.

In the trial court plaintiff recovered a judgment against the defendant in the sum of $125.00 for damages to plaintiff's automobile caused by collision of the automobile and a train of defendant company. At the time of the collision the automobile was driven by plaintiff's wife.

The accident occurred on the evening of September 23, 1935, at the intersection of Detroit and Third Streets in the city of Xenia, between the hours of six and seven o'clock. At the time of the accident it was daylight.

The automobile was being operated on Third Street in an easterly direction. Detroit Street runs in a general north and

south direction. The tracks of the defendant company run in a general southwest and northeast direction, entering Detroit Street on the west side thereof at a point approximately 65 feet south of the curb line of Third Street, and thence coursing in a northeasterly direction to the east side of Detroit Street. The main track crosses Third Street at approximately the center of its intersection with Detroit Street. Detroit Street is 99 feet in width from property line to property line. The width between curbs is 70 feet leaving 29 feet for sidewalks. The width of the sidewalk on the west side of Detroit Street is 16 feet. Third Street is 49½ feet in width between property lines and between curbs 30 feet. The width of the sidewalk on the south side of Third Street is 8 feet. This sidewalk has been narrowed. The width at the time of the accident was 11 feet, which left the width of the street 27 feet. At the southwest corner of the intersection of Third and Detroit Streets was a large brick building, known as the building of Eavey & Company. This building came out to the property line on all its fronts. The distance from the curb at the southwest corner of Third and Detroit Streets to the center of the tracks of the defendant company was approximately 23 feet. So far as the evidence discloses there were no obstructions to plaintiff's view within this 23 feet. The additional 16 feet of sidewalk would provide a view in the direction from which the train was coming. There is conflicting testimony as to an obstruction by cement mixer, pile of sand, wheelbarrow and empty barrels. According to the testimony, the pile of sand was 4 feet high. Of course, this would not obstruct the view. Nothing was said about the wheelbarrow or barrels, but it is a matter of common knowledge that they would be no more than from 2 to 3 feet high. The height of the cement mixer, according to the testimony, was from 8 to 10 feet. It was located on the sidewalk where repairs were being made. The testimony discloses that the locomotive involved in the wreck was 14 feet high. Argument is presented pro and con as to whether or not the cement mixer located on the sidewalk of the height of 10 feet (this is the most that any witness places the height) could substantially interfere with the view of the driver of the automobile in question.

Mrs. Mangan, driver of the automobile, testifies that she entered the intersection of Detroit Street and at the time of the accident was driving at an approximate speed of 15 miles per hour. The speed of the train was variously estimated at from 6 to 15 miles per hour. No witness places it at more than 15 miles per hour.

If the speeds of the train and the automobile were substantially the same they would cover fixed distances in the same time.

According to the testimony, the collision occurred on the south sidewalk line of Third street, if extended across Detroit Street. The automobile was struck on its front right side, near the door. The car was pushed in front of the locomotive until it was brought to a stop.

The evidence is undisputed that Mrs. Mangan, in driving into the intersection of Third Street, turned to the south and thereby she would be bearing in the direction from which the train was approaching.

Counsel for appellant, in their assignment of errors, enumerated nine specifications of error. We think only one demands comment. We would be inclined to the view that none of the remaining would constitute prejudicial error.

The controlling question, as we view it, is the issue of contributory negligence. Under the facts as presented, viewing them in the most favorable light in support of the judgment in favor of the plaintiff, we are forced to the conclusion that the driver of the automobile was guilty of contributory negligence as a matter of law. It is proper that we should briefly state our reason:

The physical situation and surroundings disclose that Mrs. Mangan had lived in Xenia for a number of years, and thereby was familiar with this railroad crossing. A railroad track upon which trains are operated is always a zone of danger. Everyone before crossing a railroad track is required under the law to look and listen. The courts have held that the looking and listening must be at such time that the use of the senses will be effective. The looking must be done with care.

Mrs. Mangan testified that she was driving down Third Street at a speed of approximately 25 or 30 miles an hour, but slowed down to 15 miles an hour because the intersection traffic light at Third and Detroit Streets was red, but turned green just as she reached the intersection. She had a clear unobstructed view when she was 33 feet from the track, and a more or less limited view when 39 feet from the track.

It is highly important to keep in mind the speed of the locomotive and that of the

automobile. The evidence will leave no other conclusion than that the speed was practically the same. Thereby it becomes a mathematical fact that when the driver of the automobile was 23 feet from the point where the collision occurred, the locomotive would be an equal distance. Under this situation it is obvious that Mrs. Mangan by reason of the angle from her location to that of the train, would have substantially increased distance at which she could have seen the locomotive. The fact that she turned towards the locomotive would also add to the facilities for a clear view. According to her testimony, she did not see the locomotive until within 2 or 3 feet of it. This leaves no other conclusion than that she was not looking carefully, as was her duty under the law. She drove directly in front of the train. This presents a situation of negligent conduct as a matter of law.

There is presented in evidence a plat drawn to scale and admitted to correctly show the situations as they existed on the date of the accident, except as to the width of the sidewalk on Third Street. This three foot extra width of the sidewalk would necessarily place her driving position on Third Street that much farther north. The farther north that she was located in her driving down Third Street, would, by reason of the angle, increase the distance at which she might see the moving locomotive. We find the plat of great assistance in enabling us to correctly visualize the situation. Photographs introduced in evidence are also helpful.

Coming now to enter the judgment that should have been entered in the trial court, final judgment will be entered for the defendant and costs adjudged against the appellee. Entry may be drawn accordingly.

GEIGER, J, concurs.
HORNBECK, J, dissents.

## DISSENTING OPINION

By HORNBECK, J.

In my judgment the record in this case presents a question of fact touching the contributory negligence of plaintiff's wife. The trial judge very carefully and within his prerogative properly analyzed and determined this issue.

The majority opinion lays down a hard and fast rule of conduct against Mrs. Mangan as she approached the railroad crossing and in furtherance of this rule says that under the facts of this case her failure to look when a certain number of feet from the crossing is, as a matter of law, contributory negligence. In so doing they ignore the unusual situation presented at and about the place where the collision occurred. This was not a crossing in open country but at a very busy intersection of two of the principal streets of the city of Xenia and where the locomotive of defendant ran along and traversed the main street and at a time of day when many pedestrians and much vehicular traffic was moving. The activity at the scene of the accident is illustrated by the number who were available to the parties to testify as eye witnesses.

Not only was the physical situation with which the driver of the automobile was confronted unique in the particulars heretofore mentioned, but it was further made more difficult because of the effect of the unusual ordinance regulating traffic rights at the intersection where the plaintiff's driver had to cross the railroad tracks. She had a green light, which under all ordinary conditions indicates the right to proceed, which light was red against the locomotive of defendant company but in no wise required it to stop. Of course, this situation could not be interpreted to fix negligence against the company but it was a part of the general condition with which Mrs. Mangan was confronted at the time she was struck. That she was moving at a slow rate of speed is undisputed on this record and established by witnesses other than herself. That she looked not once but twice also appears—one witness says just as she was about to go onto the track. That there were impediments to her view of considerable magnitude likewise is undisputed.

If Mrs. Mangan's conduct be judged in point of time instead of by distance as measured on a plat, she had approximately one second after she passed the point where her view was obstructed until she was on the track.

Ordinary care now, as at all times, must be measured by common experience and in the light of the circumstances with which an individual is confronted. So reading the record in this case, there is a factual question which should not be determined by this court as a matter of law.

The judgment should be affirmed.